■ MARY RUSSO, Individually and as Administratrix of the Estate of JOSEPH RUSSO, Deceased, et al., Appellants, v PORT AUTHORITY OF NEW YORK AND NEW JERSEY et al., Respondents. — Judgment, Supreme Court, New York County (Blangiardo, J., and a jury), entered October 8, 1981, which, *inter alia,* dismissed each of the plaintiffs' actions against defendant Port Authority, and awarded plaintiff Joseph Russo the sum of $93,529.27 and plaintiff Mary Russo the sum of $15,216.95 as against defendant Lazzaro Mastronardi, unanimously reversed, on the law and on the facts, the matter remanded for a new trial, with costs to abide the event, and the complaint of Amelia Mastronardi reinstated. On April 30, 1977, at about 2:30 P.M., a clear sunny Sunday afternoon, Alan Arbutina, driving a Port Authority wrecker tow truck which had been proceeding in a westerly direction in the third lane from the center divider just west of the toll plaza area on the New Jersey side of the George Washington Bridge, made a U-turn and then headed back diagonally at a 60-degree angle towards the oncoming westbound traffic in order to reach an opening in the center-wall divider separating the eastbound from westbound lanes of traffic. Arbutina was responding to a fire in the outside eastbound lane. The roadway for westbound traffic at the New Jersey end of the main bridge span crests at the toll plaza. Arbutina made his U-turn on the downhill side of the crest at a point where his vehicle would not be visible to westbound traffic approaching the toll booth crest. Arbutina's view of westbound traffic was obscured not only by the crest but as well by an alteration which had changed the configuration of the westbound lanes at the toll plaza area. In 1970 the Port Authority discontinued the payment of tolls for westbound traffic. As a result some of toll booths which had previously serviced westbound traffic were converted to eastbound traffic use. This conversion extended these toll booths into what had previously been westbound toll lanes, requiring westbound traffic to swing to the right around the newly converted eastbound toll booths. This twist in the westbound lanes caused a visual obstruction of the view that a driver in the left westbound lane had of the roadway beyond the toll plaza, as well as the view that a driver beyond the crest would have of westbound traffic behind him in the toll plaza area. Defendant Mastronardi, with his wife and her parents as passengers, was proceeding westbound just past the New Jersey toll plaza in moderate to heavy traffic when the two vehicles collided in the extreme left-hand lane. The respective versions of the two operators differ in that, *inter alia,* Mastronardi contends that the Port Authority vehicle was in motion at the time of impact while Arbutina claims that it had stopped. Even accepting Arbutina's version,

however, two facts damaging to the Port Authority's position emerge. According to Arbutina he was stopped, straddling the extreme left-hand lane for 10 seconds before impact. Directly in front of him was a marked off safety area wide enough to shelter his truck from oncoming traffic. Yet, Arbutina never moved his vehicle into that area. Also, Arbutina did not use an alternate available route which would have led him to the distress area. He could have gained entry to the eastbound lanes by exiting the westbound lanes just east of the toll plaza and circling over the bridge lanes, a total distance of some 300 to 400 yards, by means of an overpass. On these facts the jury exonerated the Port Authority, holding Mastronardi solely responsible for the accident. We believe that this result may have been partially dictated by an erroneous charge, to which appropriate objection was taken, to the effect that the verdict must be against one or the other defendant on the basis of a resolution of the single issue of whether Mastronardi had sufficient time to see the tow truck and to bring his vehicle to a stop or, conversely, whether Arbutina operated the tow vehicle in such a reckless manner that Mastronardi did not have sufficient time in which to stop safely. Such a charge unduly emphasized this single issue in terms of finding one or the other of the two defendants liable, and effectively excluded the other aspects of negligence on either defendant's part from the jury's consideration. Furthermore, the verdict against Mastronardi's wife Amelia and in favor of the other two passengers, her parents, also injured in the same accident, all under the same circumstances, was inconsistent, contrary to the law, and against the weight of the evidence. The court had instructed the jury that all three plaintiffs were free from contributory negligence. No issue had been submitted to the jury as to whether Amelia's injuries had met the New Jersey no-fault threshold requirements. This aspect of the verdict should have been set aside, as requested, and a new trial ordered. Instead, the trial court, compounding the error, dismissed the complaint of Amelia on the ground that the two fractured teeth and damage to a third tooth which she claimed to have suffered did not meet New Jersey's threshhold no-fault requirement because said injuries were "confined solely to the soft tissue of the body." If we were not ordering a new trial for the reasons already indicated, we would remand for a new trial on damages as to the plaintiffs Joseph and Mary Russo because of the shocking inadequacy of the damages awarded them. Joseph Russo, 74 years of age at the time of the accident, sustained extensive injuries, including multiple fractures of the pelvis and ribs, fractures of both shoulder sockets, both clavicles and both scapulae, resulting in 122 days of hospitalization with surgery, and is now permanently disabled from employment. The jury awarded him $25,000 for his pain and suffering and disability. Yet, he was awarded $39,000 on his derivative action for the loss of services of his wife who was awarded only $10,000 for her injuries. Her injuries included a fracture of the left patella which extended into the knee joint capsule itself and resulted in an irregularly healed fracture line articulating on the bone knobs of the femur of the knee joint, causing a permanent irritation in the left knee. No medical evidence was introduced to dispute her claimed injuries. These awards are so inadequate and skewed as to indicate to us that the jury lacked any comprehension as to its function in assessing damages and the standards it was to use in measuring injury. The verdict is vacated in its entirety, the complaint of Amelia Mastronardi reinstated and the matter remanded for a new trial on all issues. Concur — Sullivan, J. P., Ross, Fein, Milonas and Alexander, JJ.